UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN PARSONS,

Plaintiff,

Case No. 04-74457

v.

Magistrate Judge R. Steven Whalen

CITY OF PONTIAC, et al.,

Defendants.

_______________________________/

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

Before the Court is Defendants' Motion to Dismiss and for Summary Judgment, pursuant to Fed R. Civ. P. 12(b)(6) and 56 [Docket #26]. For the reasons that follow, Defendants' motion is GRANTED and the Complaint is DISMISSED WITH PREJUDICE.

## I. FACTUAL BACKGROUND

Plaintiff filed his Complaint on November 15, 2004, asserting a claim under 42 U.S.C. §1983 based on alleged Fourth and Fourteenth Amendment violations, as well as state law claims alleging false arrest and false imprisonment. These claims arise out of Plaintiff's arrest and detention following the shooting of his former supervisor at the Pontiac Fire Department.

The historical facts underlying the complaint are not in serious dispute. In the early

hours of April 7, 2004, the Pontiac Police Department received a call indicating that Art Frantz, an 18-year veteran Pontiac firefighter, had been shot at Pontiac Fire Station #1. Defendants contend that during the course of their initial investigation later the same day, they were informed by a fire department lieutenant and the union president that Plaintiff was one of two rookie firefighter who had recently been terminated. The union president, Marc Seay, recalled that Plaintiff's reaction to his termination was "completely different" and less typical that of the other fired rookie. *See Docket #36*, Exhibit D. Police interviewed various firefighters who opined that Plaintiff had "a very poor attitude," was "kind of a screw up," bragged about his exploits with women, and had recently complained of depression. *Id.* The police report indicates that Plaintiff had told others that he possessed two unregistered handguns. *Id.*

The same day, Defendant Sherry McKinney, a Pontiac Police Detective, interviewed Sara Ann Henig, Plaintiff's former girlfriend, who had called the police, indicating she had possible information about Frantz' shooting. Henig told McKinney that Plaintiff was initially excited about the prospect of working for the Pontiac Fire Department, but soon began to complain about his job and co-workers. Henig stated that Plaintiff threatened to "punch out" "a list of guys" after his probationary period was ended. *Id*. According to Henig, Plaintiff told her after his February, 2004 termination that he was depressed and suicidal, but denied having a suicide "plan." *Id*. Henig reported that Plaintiff stated, "When I do it you will hear about it on the news." *Id*. In addition, Henig told McKinney that Plaintiff "carried on gun at all times and one in his trunk for protection." *Id.*

The same day, police interviewed another of Plaintiff's former girlfriends, Michelle Lee Heide, who stated that Plaintiff had previously received counseling for "temper problems." *Id*.

Later the same morning, Plaintiff received a call from one of his former co-workers, Paul Holmes, informing him that Frantz had been shot and asking him "meet him somewhere . . . and tell [him] what was up," discovering later that Holmes set him up to be apprehended *Id.*, Exhibit A at 166-167, 170-171. Holmes had earlier stated to police that Plaintiff was "the first person" to come to mind after being informed of a shooting at the fire station. *Id*. at Exhibit D. Upon arriving at the agreed meeting place, while waiting for Holmes to appear, Plaintiff was apprehended by police whom he alleges "threw" him to the ground. *Id.*, Exhibit A at 173. Plaintiff estimates that his arrest occurred at approximately 12:10 p.m. on April 7, 2004. *Id.*, Exhibit A at 172. Defendant McKinney alleges that she read Plaintiff his *Miranda* rights at 12:47 p.m. *Id*. at Exhibit C. Later the same afternoon, police searched Plaintiff's parents home in Waterford, Michigan where they found "three long guns and a hand gun" in the attic of the home.. *Id*. at Exhibit D.

The same day, April 7th, Kiera L. Evans, Plaintiff's current girlfriend, provided a statement to police accounting for his movements between 1:00 a.m. and 12:00 p.m. on April 7, 2006. *Id*. Det. McKinney stated that Ms. Evans was equivocal in her enthusiasm to provide information, at first agreeing to take a polygraph test and provide a written statement, but later refusing to do either. Evans stated that on April 7th, Plaintiff went with her to the Auburn Hill Police Department for a preliminary breath test (PBT), and eventually

back to her apartment. The Pontiac Police Department noted that a surveillance camera recorded Evans and Plaintiff arriving at the Auburn Hills Police Department at 5:13 a.m. and leaving at 5:16 a.m. on April 7, 2004. *Docket* #26 at Exhibit D. Ms. Evans said that they fell asleep, and conceded that the Plaintiff could have left the house sometime in the early morning.

Police reports indicate that Art Frantz was shot sometime between approximately 5:15 and 6:50 a.m., when he was found by a coworker. *Id.*

On April 8, 2007, Frantz, now able to communicate, was interviewed from his hospital bed at University of Michigan Hospital in Ann Arbor. He told police that his assailant was "a light complexioned male . . . around 6 feet tall and around 160 to 170 pounds," stating further that he did not believe that Plaintiff had any reason to shoot him. *Id.* Frantz added that he had unlocked and opened the rear door of the firehouse after his assailant knocked on the window adjacent to the entrance, stating that firefighting staff without keys customarily knocked at that window to gain admittance before the doors were unlocked at 7:00 a.m. *Id.*

Also on April 8th, another former girlfriend, Andreea Cohoon, stated that Plaintiff was "quite a drinker," which played a role in their breakup, adding that Plaintiff had told her that he owned a gun. *Id.* Plaintiff McKinney completed a "Advice on Release From Custody," at 11:50 a.m. on April 9, 2004, which states that Plaintiff was released "pending further investigation for attempt murder charge." *Docket* # 26 at Exhibit C. The same day, sometime between 11:50 a.m. and 1:17 p.m., Plaintiff was "escorted" to a nearby psychiatric facility in handcuffs and shackles by Oakland County Sheriiff's Deputies presenting a petition for Plaintiff's psychiatric evaluation. *Docket* #36 at Exhibit I. After facility personnel determined that Plaintiff did not

present a threat to himself or others, he was released sometime between 2:45 and 3:30 p.m. *Id.*[1]

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[1] At oral argument, the parties agreed that neither Defendant McKinney nor any other Defendant was involved in Plaintiff's temporary transfer to the psychiatric facility, and that for purposes of this Complaint and motion, Plaintiff's custody was terminated at 11:50 a.m. on April 9, 2004. Thus, the total period of detention between Plaintiff's arrest and his release from custody was just short of 48 hours.

as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party

cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III. ANALYSIS

### A. Section 1983 / Fourth Amendment

Defendant McKinney seeks dismissal on the basis of qualified immunity. Qualified immunity is an affirmative defense. Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. Under *Saucier*, the inquiry is sequential, that is, the court must first determine whether any constitutional right was violated. In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable? Once a defendant has met the burden of affirmatively pleading the defense, the ultimate burden of proof is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

### 1. Plaintiff's Arrest

The Fourth Amendment protects citizens from unreasonable searches and seizures. An arrest, which is a "seizure" of the person, must be supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 212-14, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 592 (6th Cir. 1994). Probable cause exists when the police have "reasonably trustworthy information..sufficient to warrant a prudent man in believing that the [arrested person] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Further, "[p]robable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).

At the time Defendant McKinney made the decision to arrest the Plaintiff, she had the following information: Sara Henig, Plaintiff's former girlfriend, called to say that when she heard about the Frantz shooting on the news, she immediately thought of Plaintiff; that Plaintiff worked at the Pontiac Fire Department, and said that he hated the people who worked there; that Plaintiff had a "list of guys" he was going to harm (i.e., "punch out") when his probationary period ended; that Plaintiff had been fired, and was despondent; that Plaintiff expressed suicidal feelings; that Plaintiff told Henig when he did something, it would be big, and she would "hear about it on the news"; that Plaintiff carried a gun with him. McKinney also knew that Frantz had opened the door to his assailant after hearing a knock at the window, which Frantz said was the typical fireman's

way of getting the attention of the persons inside. Prior to the arrest, the police also talked to Plaintiff's former co-worker Holmes, who said that Plaintiff was "the first person" to come to his mind when he learned of the shooting.

"In general, the existence of probable cause in a §1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). In the present case, given the compelling information known to Det. McKinney–including information from a named former girlfriend– no reasonable juror could conclude that she lacked probable cause to arrest the Plaintiff. McKinney knew that Plaintiff worked for and had been fired by the victim, that he was familiar with the fireman's protocol for gaining entry, that he harbored resentment and therefore had motive to shoot the victim, that he had made threats, that he carried a gun, and that he said Henig would hear about his plan on the news. Yes, the police could have taken less intrusive action, such as locating and questioning the Plaintiff, but that is irrelevant. The only question is whether they had probable cause to arrest, and they did.

Because the arrest was clearly supported by probable cause, there was no Fourth Amendment violation at the point Plaintiff was taken into custody, and therefore, McKinney is entitled to qualified immunity based on the initial arrest.

**2. Plaintiff's Subsequent Detention**

The next question is whether the length of Plaintiff's detention–just shy of 48 hours–was so excessive as to violate the Fourth Amendment.

In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the

Supreme Court held that under the Fourth Amendment, an individual arrested without a warrant is entitled to a prompt judicial determination of probable cause. In *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 1664 114 L.Ed.2d 49 (U.S.Cal.,1991), the Supreme Court refined the definition of "prompt" within the meaning of *Gerstein*, holding that "judicial determination of probable cause within 48 hours of [a warrantless] arrest will, as a general matter, comply with the promptness requirement of *Gerstein."* Under *County of Riverside* and *Gerstein*, where the detention is less that 48 hours, "[a] presumption, rebuttable by the plaintiff, arises that one has not suffered a Fourth Amendment deprivation." *Leschorn v. Fitzgerald*, 142 F.3d 434, 1998 WL 69036, *2 (6th Cir. 1998). Where the period of detention exceeds 48 hours, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance" to justify the delay. *County of Riverside*, 500 U.S. at 57.

In this case, the period of detention was less than 48 hours, and therefore presumptively reasonable under the Fourth Amendment. However, this is a rebuttable presumption, and there may be a Fourth Amendment violation "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." *County of Riverside*, 500 U.S. at 56.

An example of an unreasonable delay of less than 48 hours is where the delay is "for the purpose of gathering additional evidence to justify the arrest." *Id*. Indeed, that was the situation in *Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005),

cited by Plaintiff. In *Radvansky*, however, unlike the present case, the plaintiff's initial arrest was effected without probable cause. *County of Riverside* was clear that a person cannot be arrested on suspicion and held until the police obtain additional information to support a probable cause determination.

More to the point is *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999), where the Sixth Circuit held that "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." Likewise in *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988), the court held that "[a] policeman...is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation *if the facts as initially discovered provide probable cause*." (Emphasis added).

As discussed above, the initial arrest was well-supported by probable cause. To be sure, the police received additional information post-arrest, some of it exculpatory. They also received some *inculpatory* information. For example, guns were found in Plaintiff's parents' residence–accessible to the Plaintiff–during the execution of a search warrant. But even the exculpatory evidence was ambiguous. Ms. Evans, the girlfriend, provided a partial alibi, but there were temporal gaps that she could not account for, during which Plaintiff would have had a window of opportunity, however brief, to shoot Frantz. Although Frantz could not identify the shooter (who was wearing a hooded shirt or jacket), and although the physical description he gave was somewhat different from

Plaintiff's appearance, in terms of height and weight, nothing he said affirmatively excluded Plaintiff as the shooter.

There could be situations where the police receive strongly exculpatory post-arrest information that could vitiate probable cause. For example, another suspect could confess to the crime, the confession could be corroborated by physical and other evidence, and the arrested individual's alibi could be more firmly established. In such a case, the continued detention of the arrested individual might be unreasonable. In the present case, however, the post-arrest information, viewed along with the pre-arrest information (again, in determining probable cause, the police must consider *all* the facts and circumstance within their knowledge), did not nullify the initial probable cause determination. The appropriate benchmarks here are *Ahlers* and *Criss*.

The Plaintiff has therefore not met his burden, under *County of Riverside*, of rebutting the presumption of reasonableness of a detention, supported by probable cause, of under 48 hours. Because this detention does not support Plaintiff's claim of a constitutional violation, Defendant McKinney is entitled to qualified immunity under *Saucier*.

## B. State Law Claims

"[U]nder Michigan law, a false arrest or imprisonment is an arrest or imprisonment 'without legal justification,' i.e., without probable cause." *Boykin v. Van Buren Tp.*, 479 F.3d 444, 451 (6th Cir. 2007)*; Lewis v. Farmer Jack Div., Inc.,* 415 Mich. 212, 327 N.W.2d 893, 901 (Mich.1982). As discussed above, Plaintiff's arrest was supported by

probable cause, and no reasonable trier of fact could find otherwise. Therefore, Defendants are entitled to dismissal of the state law claims of false imprisonment and false arrest.[2]

### C. Municipal Liability

Plaintiff also brings a claim against the City of Pontiac based on municipal liability. Under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), § 1983 liability cannot be imposed on a theory of *respondeat superior*:

> "A municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, 436 U.S. at 691. (Emphasis in original).

Instead, a municipality incurs liability only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.*; *Pembaur v. Cincinnati*, 475 U.S. 469, 477, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In *Johnson v. City of Detroit*, 944 F.Supp. 586, 598 (E.D. Mich. 1996), the Court explained, "The requirement of an official policy distinguishes the acts of the employee from those of the municipality, ensuring that

---

[2] "False arrest and false imprisonment as causes of action are said to be distinguishable only in terminology. . . . [A] person who is falsely arrested is at the same time falsely imprisoned, and an unlawful arrest may give rise to a cause of action for either false arrest or false imprisonment. Thus, it has been stated that false arrest and false imprisonment are not separate torts, and that a false arrest is one way to commit false imprisonment; since an arrest involves a restraint, it always involves imprisonment." *Lewis,* at 231 n. 4, 327 N.W.2d 893 (Williams, J., dissenting), citing 32 Am. Jur. 2d, FalseImprisonment, § 2, pp. 59-60; *Peterson Novelties, Inc. v. City of Berkley,* 259 Mich.App. 1, 18, 672 N.W.2d 351, 362 (Mich.App. 2003).

the municipality is held responsible only for the latter."

A municipal policy need not be formal or written to bring § 1983 into play. It can be found in "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)(citations omitted). In addition, § 1983 liability can be based on a policy of inadequate training or supervision, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

First and foremost, there can be no municipal liability if there is no constitutional tort. In this case, no reasonable jury could find that Plaintiff's constitutional rights were violated.

In addition, the Plaintiff has not set forth any facts, beyond mere conclusions, to support a finding that the City of Pontiac has any policy or custom which results in the violation of constitutional rights, or that the City has failed to properly train its police officers. Even if it were shown that the arresting officers in this case acted improperly, both the Supreme Court and the Sixth Circuit have held that a single incident cannot by itself support an inference of a customary practice sufficient to justify municipal liability under § 1983. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Dorsey v. City of Detroit*, 858 F.2d 338, 345 (6th Cir. 1988).

Likewise, under *Tuttle*, "the fact that only a single unconstitutional act is alleged supports a conclusion that the act in question was not caused by a policy or that the need for heightened training or screening was not obvious." *Johnson v. City of Detroit*, *supra*, 944 F.Supp. at 599.

Accordingly, Defendant City of Pontiac is entitled to dismissal.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that:

(1) Defendants' Motion to Dismiss and for Summary Judgment [Docket #26] is GRANTED.

(2) The Complaint is DISMISSED WITH PREJUDICE.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 28, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 28, 2007.

s/Susan Jefferson
Case Manager

